STRAKOSCH *v.* STRAKOSCH.

*(City Court of New York, Trial Term. June 24, 1890.)*

MASTER AND SERVANT—CONTRACT OF HIRING—DURATION OF TERM.

Defendant hired plaintiff to act as agent and manager of his opera company at a certain amount per week, "until the close of the season, which will not last longer than the middle of May." The contracts with performers, which were filled in by plaintiff, provided that, "in case of the serious or prolonged illness of * * * the leading soprano, this contract shall be terminated and canceled." On account of the sickness of said soprano the company was in fact disbanded, and the *attachés* were paid for services actually rendered, and receipts were taken in full, plaintiff being active in bringing this about. *Held,* that the time of the disbandment was the "close of the season" within plaintiff's contract.

Action by Edgar Strakosch against Carl Strakosch for damages for breach of a contract of hiring. By the contract plaintiff was to act as agent and manager of defendant's opera company at a certain amount per week, "until the close of the season, which will not last longer than the middle of May."

*Charles De Witt Brower,* for plaintiff. *Charles Wehle,* for defendant.

McADAM, C. J. The determination of the action depends upon the interpretation of the phrase "until the close of the season," which the language of the contract declares "will not last longer than the middle of May," and which implies that it might not last so long. The terms used in the contract, together with the evidence in respect thereto, show that the time when the season was to close was uncertain, and left it to be determined by future events, such as financial success or failure, illness or other circumstances af-

fecting the continuance of the enterprise. Some one had to determine when the exigencies of the situation required a limit to be put to the performances, and this person, in the nature of things, was the defendant, the proprietor and responsible leader of the troupe. The defendant drew the season to a close January 26, 1889, owing to the illness of Miss Kellogg, the chief attraction of the venture, and all the *attachés* were paid to that date, and were furnished with transportation to their respective homes. In the subcontracts with performers, filled in by the plaintiff, are these words: "In case of the serious or prolonged illness of Clara Louise Kellogg, the leading soprano, this contract shall be terminated and canceled," a circumstance proving that the company was likely to disband on the possible occurrence of the event specified. The event occurred, and the illness of Miss Kellogg was of a serious and prolonged nature. The different employes accepted the situation, took their pay for services actually rendered, and receipted in full. The plaintiff was active in bringing about this result, and his conduct confirms the theory contended for by the defendant that the season was effectually brought to an end at that time. This brings the contract as near to the actual meaning of the parties as the words they saw fit to employ, properly construed, and the rules of law, will permit. It gives effect to their evident intention, conforms to the situation of the parties and the subject-matter of the contract, accords with their acts which may be called to aid in the interpretation of their writings, and dovetails in with the subcontracts, all of which went to make up the operatic combination of which the plaintiff formed part. It follows that the plaintiff, having been paid till January 26, 1889, when the season was properly brought to a close, cannot recover, on any fiction of law, damages for not being permitted to perform services thereafter, and that there must be judgment for the defendant.